## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ORVELIN SANTANA-JAMES, | : | CIVIL ACTION NO. |
| BOP Reg # 67018-019, | : | 1:17-CV-2595-WSD-JSA |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:15-CR-262-WSD-JSA-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
|     Respondent. | : | 28 U.S.C. § 2255 |

### MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant has filed a 28 U.S.C. § 2255 motion to vacate his 41-month sentence. (Doc. 40). **IT IS RECOMMENDED** that his motion be **DENIED**.

### I.  Procedural History

On July 14, 2015, a federal grand jury sitting in the Northern District of Georgia returned an indictment charging [Movant] with illegal reentry into the United States as an aggravated felon after having previously been deported. (Doc. 1). [He had] pled guilty to trafficking cocaine in 1998. (PSR ¶ 24). [He] was paroled from [state] prison in 2011 and was removed from the United States [in] 2012. (*Id.* at ¶¶ 6, 24). On April 17, 2015, [he] was found in the Northern District of Georgia. (Doc. 1). [He] entered a plea of guilty to the Indictment on October 22, 2015. (Doc. 16-1).

(Doc. 42 (Gov't Resp.) at 2). Included in Movant's Guilty Plea and Plea Agreement is a Limited Waiver of Appeal:

> To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and


> sentence and the right to collaterally attack his conviction and sentence in any postconviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or a variance from the sentencing guideline range as calculated by the district court. Claims that Defendant's counsel rendered constitutionally ineffective assistance are excepted from this waiver. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(Doc. 16-1 at 10-11). Movant signed the Guilty Plea and Plea Agreement (*id.* at 12),

and he then separately signed the following Certification:

> I have read the Indictment against me and have discussed it with my attorney. I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial. I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding. *No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement.* The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission. *I am fully satisfied with the representation provided to me by my attorney in this case.*

(*Id.* at 13 (emphasis added)).

At his plea hearing, Movant acknowledged the following:

1. he understood the trial rights he was willingly forfeiting by pleading guilty (Doc. 34 at 8-15);

2. he understood the elements of the crime to which he was pleading guilty and what the government would have to prove to convict him (*id.* at 26-27), and he had in fact committed that crime in the manner the government described (*id.* at 41-44);

3. he understood the terms of his plea agreement (*id.* at 15-21), including the appeal waiver (*id.* at 35-37), and he had received no threats or promises inducing him to plead guilty, other than those outlined in the agreement (*id.* at 21);

4. he understood that the maximum penalty for his crime was 20 years' imprisonment; that this Court could sentence him "to the maximum authorized punishment" despite the government's recommendation for a lesser sentence of 41 months; and that if he received a sentence greater than he was expecting he could not withdraw his plea (*id.* at 27-28, 39-41);

5. he was satisfied with his counsel's representation (*id.* at 25); and

6. his guilty plea was in his "best interest" (*id.* at 45).

The Court accepted Movant's guilty plea, finding that he was "voluntarily offering to plead guilty to the charge against him in the indictment fully understanding the charge and fully understanding the consequences of pleading guilty to it." (*Id.* at 47). The Court later sentenced Movant to 41 months' imprisonment (Doc. 20), after expressing concern that the sentence that the government had agreed to in the plea

3

agreement was a "sweetheart" or "incredible deal" for Movant (Doc. 35 at 21-22).

> [T]he district court found that [Movant] had a criminal history category of two and a total offense level of 21 [], resulting in a custody guideline range of 41 to 51 months' confinement. (Doc 35 [at] 3). The offense level consist[ed] of a base offense level of 8 under United States Sentencing Guideline (U.S.S.G.) § 2L1.2, increased by 16 levels under U.S.S.G. § 2L1.2(b)(1)(A)(i) for the 1998 felony drug trafficking offense . . ., and reduced by 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1 . . . . (PSR at ¶¶ 14-22). Neither party objected to the court's Guidelines calculation. (*Id.* at 4).

(Doc. 42 at 8).

> In his § 2255 motion, Movant claims that his counsel was ineffective
>
> for failing to negotiate a reasonable plea deal for an illegal re-entry offense . . . below Guidelines in exchange for [a] prompt and undisputed guilty plea. [His] sentence was unreasonably enhanced for a previous conviction for which [he] had already served his sentence; and
>
> for failing to negotiate [a] plea agreement without [an] appeal waiver.

(Doc. 40 at 4-5).

## II. Discussion

> To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must rebut the strong presumption that his counsel's

4

> conduct fell within the range of reasonable professional assistance. *Id.* at 689. A defendant may satisfy the prejudice prong [in the guilty plea context] by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

*Connolly v. United States*, 568 Fed. Appx. 770, 770-71 (11th Cir. 2014); *see also Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citing *Hill* to the same effect).

### A.    The Government's Response to the § 2255 Motion

With respect to the performance prong of the *Strickland* standard, the government argues in its response to the § 2255 motion that Movant

> does not demonstrate why the plea agreement and appeal waiver negotiated by his counsel fell below objective standards of reasonableness. [Movant] entered into a plea agreement in which the government agreed to recommend a sentence of "no more than 41 months," or the low-end of his Guidelines range. (Doc. 16-1 at ¶ 16). The District Court highlighted that the government's recommendation of 41 months was lenient and "an incredible deal" where [Movant] was "in prison for a long time, and not very long after he's removed he comes back[]" and "present[s] a serious and significant risk to the citizens of the United States." (Doc. 35 at 13[, 21]).

(Doc. 42 at 17).

Noting that Movant does not dispute that he returned to the United States after being removed in 2012 upon his parole from a lengthy drug trafficking sentence, the government argues that for the crime of illegal re-entry, Movant was properly

5

sentenced

> as an "aggravated felon," under 8 U.S.C. § 1326(b)(2), and given a 16-level offense level enhancement, based on his committing "a drug trafficking offense for which the sentence imposed exceeded 13 months," under U.S.S.G. § 2L1.2(b)(1)(A). The Guidelines specifically provide for a sentencing enhancement based on prior drug convictions[;] therefore, [Movant's] counsel was not "unreasonable" for failing to object to this enhancement.

(*Id.* at 18-19 (citing 8 U.S.C. § 1326(b)(2) (providing 20-year maximum sentence for defendant previously convicted of aggravated felony), § 1101(a)(43)(B) (defining "aggravated felony" as including "drug trafficking crime"));[1] and arguing that Movant's ineffective-assistance claims fail on the performance prong of the *Strickland* standard).

The government argues further that Movant has failed to satisfy the prejudice prong of the *Strickland* standard because

> [h]e states only that his counsel failed to negotiate a below guideline plea agreement without an appeal waiver, but does not explain how the outcome in his case would have been different but for the alleged failure. In fact, the District Court indicated a willingness and desire to impose a higher sentence had the government recommended it, so he would have

---

[1] U.S.S.G. § 2L1.2 was amended, effective November 1, 2016 — i.e., several months after Movant was sentenced on March 7, 2016 — to reduce the enhancement for a prior felony conviction such as Movant's. *See* 18 U.S.C. Appx. § 802. But this amendment has not been made retroactive, *see* U.S.S.G. § 1B1.10(a), (d), and Movant's plea counsel cannot be faulted for failing to anticipate this change in the law.

6

> been worse off but for [] the plea agreement binding the government to a low-end recommendation. Moreover, [Movant] does not indicate how he would have prevailed on appeal if he had pled without a plea agreement. [He] is not entitled to relief.

(*Id.* at 19-20 (citation omitted)).

## B.     Movant's Reply

In his reply brief, Movant presents the following arguments:

> This claim arises from the circumstances of the advice and instructions given to the movant before he agreed to sign the plea agreement and the deficient performance of Counsel leading to signing of the said plea [ag]reement. *Movant does not dispute the facts surrounding the arrest for illegal re-entry to the United States, nor does he dispute that he pled guilty willingly . . . on October 22nd, 2015.*
> . . . .
> *What the movant does dispute is the likelihood of the sentence he would have received had he proceeded to trial.* If the Court truly felt that a term of enhanced imprisonment was absolutely necessary for a man who left his country [Mexico] in fear of his life after his cousin was murdered, then maybe a year, followed by deportation may have been reasonable, but merely being present in the United States does not warrant 41 months in prison. The movant may have presented a serious risk to citizens of the United States 20 years ago, but he returned here, albeit without permission, as a result of serious threats to his life. . . .
>
> The movant was only [sat]isfied with his attorney's representation[] because his attorney offered him no alter[na]tives to what was seemingly on the table. *Any experienced lawyer would quite easily have negotiated a plea deal far below what was eventually accepted, because the movant had committed no crime.* In fact, the enhancement of 16 levels accounted for at least 35 more months of his current sentence. . . .
> . . . .

7

> [M]ovant's counsel allowed the plea agreement to waive his rights to appeal, in exchange for a reasonable sentence to be negotiated. A sentence of 41 months for simple re-entry cannot rationally be described as reasonable, nor the product of a competent negotiation. By the time sentencing occurred, the movant's fate had alrcedy been sealed, and despite the answers he gave during his plea colloquy at sentencing, the entire process is highly initmidating and he was only doing as instructed by his Counsel. No attorney ever tells his client to voice his concerns about representation or understanding at such proceedings.
> . . . .
> The decent thing to do is agree [that] movant was poorly served by Counsel and unjustly and unnecessarily dealt with by the Courts as a result of objectively ineffective representation by Counsel of record, and [Movant] moves this Honorable Court for his immediate release.

(Doc. 43 at 1-2, 3-4 (emphasis added)).

### C.    Analysis

"A guilty plea is knowing and voluntary if the defendant entered the plea without coercion and with the understanding of the nature of the charges and the consequences of the plea." *United States v. Speight*, 454 Fed. Appx. 785, 787 (11th Cir. 2011). Evidence that an accused entered his guilty plea knowingly and voluntarily includes "[s]olemn declarations in open court," which "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977) (noting that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable

8

barrier in any subsequent collateral proceedings"); *see Connolly*, 568 Fed. Appx. at 771 (" 'The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.' " (quoting *Blackledge*, 431 U.S. at 74)).

Movant's sworn declarations during his guilty plea proceedings reveal that his plea was knowing, voluntary and uncoerced; that he was satisfied with his counsel's performance; and that his guilty plea is therefore valid and enforceable. (*See generally* Doc. 34); *Speight*, 454 Fed. Appx. at 787. Movant cannot overcome the strong presumption of veracity inherent in his solemn declarations before this Court, *see Blackledge*, 431 U.S. at 74, by presenting, as he has done, nothing more than his unsupported assertion that he would have received a lesser sentence had he proceeded to trial instead of relying on counsel to negotiate a plea agreement that Movant now claims is the product of ineffective assistance in negotiating it, because it included an appeal waiver and did not include a below-Guideline sentence, and in presenting it to Movant as a *fait accompli*. (*See* Doc. 43); *see also Patel v. United States*, 252 Fed. Appx. 970, 975 (11th Cir. 2007) (rejecting § 2255 appellant's claim — that he was coerced into entering his guilty plea in part by counsel's promise of a more lenient sentence than he received — because appellant's "allegations are in direct conflict with

9

his statements during the plea colloquy, and he has produced no evidence to challenge the veracity of his sworn testimony").

Movant has offered nothing to support his conclusory assertion that a competent attorney could "quite easily" have negotiated a better plea deal on his behalf, despite the minimum Guideline sentencing level of 41 months at the time of his sentencing hearing. (*See* Doc. 43 at 2). He thus has not shown deficient performance on plea counsel's part. And had Movant not entered into the plea agreement that his counsel negotiated, it is likely that he would have received a greater sentence from this Court, which considered the "sweetheart" deal offered to Movant to be "incredible," and it is unlikely that the Eleventh Circuit would have disturbed that outcome on appeal, so long as the sentence did not exceed 51 months. Movant thus has also failed to establish a reasonable probability that he was prejudiced by counsel's performance. *See Stillwell v. United States*, 16-12390, 2017 U.S. App. LEXIS 18289, at *1, 10 (11th Cir. Sept. 21, 2017) (affirming district court's denial, "without an evidentiary hearing, [of Stillwell's § 2255] claim that his counsel rendered ineffective assistance by" giving him faulty sentencing advice "because Stillwell cannot show prejudice. Assuming that Stillwell's counsel performed deficiently . . ., Stillwell has failed to show that, but for his counsel's advice, he would not have pled guilty and would have instead insisted on

10

going to trial. Stated another way, Stillwell has not shown that his counsel's erroneous advice rendered his guilty plea involuntary." (citation omitted)).

Here, of course, Movant has acknowledged that he pled guilty voluntarily, with full knowledge and understanding of both the appeal waiver and the 41-month sentencing recommendation contained in his plea agreement. (*See* Doc. 43 at 1). Just as in *Stillwell*, he has not shown that counsel's allegedly deficient performance "rendered his guilty plea involuntary." *See Stillwell*, 2017 U.S. App. LEXIS 18289, at *10. Movant's real dispute is with the advisory Sentencing Guidelines, under which his sentencing range was correctly calculated at the time of his sentencing as 41 to 51 months' imprisonment for his crime of conviction, enhanced by his status as an aggravated felon. Movant cannot fault his plea counsel for that calculation.

### III.   Certificate of Appealability

A § 2255 movant must obtain a certificate of appealability ("COA") before appealing the denial of a motion to vacate. 28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B). A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the

11

issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted). A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)). Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here. *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case). Because there is no reasonable argument that Movant has set forth a meritorious claim in his § 2255 motion, a COA should not issue in this matter.

## IV.   Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DENY** Movant's 28 U.S.C. § 2255 motion (Doc. 40) and **DENY** Movant a certificate of appealability.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this 27th day of November, 2017.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)